1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

| | |
|---|---|
| DIRECT ROUTE, LLC, a Washington LLC, | CASE NO. C09-1509MJP |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING  DEFENDANTS' MOTION FOR SANCTIONS |
| v. | |
| ONOFFLINE, Inc., a Washington corporation, d/b/a ADVENTONLINE, and FERNANDO AZNAR, an individual, | |
| Defendants. | |

17

18

19

20

21

22

23

24

This matter comes before the Court on the motion for sanctions filed by Defendants

OnOffline, Inc. and Fernando Aznar. (Dkt. No. 53). The Court first reviewed the motion,

Plaintiff's opposition (Dkt. No. 56), Defendants' reply (Dkt. No. 60), and related filings (Dkt.

Nos. 54, 55, 57, 58, 59, and 61.) Upon determination that an evidentiary hearing was necessary,

the Court reviewed the supplemental briefing provided by the parties (Dkt. Nos. 84, 93, 96, and

98), and all related filings (Dkt. Nos. 85, 86, 87, 88, 89, 90, 91, 92, 94, 95, 97, 99, 100, 101, 102,

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING  DEFENDANTS' MOTION
FOR SANCTIONS- 1

1 | 106, 107, 108, 109, and 113). The Court held a four-day evidentiary hearing on December 10-11

2 | and 17-18, 2012.

3 |      Upon consideration of all the evidence, and after hearing the oral arguments of the

4 | parties, the Court DENIES Defendants' motion. In reaching this determination, the Court makes

5 | the following findings of fact and conclusions of law:

6 | **Findings of Fact**

7 | 1.     Plaintiff Direct Route is a Washington LLC located in Tukwila, Washington. Defendant

8 | OnOffline is a Washington corporation with its principal place of business in Seattle,

9 | Washington. Defendant Fernando Aznar is the CEO of OnOffline.

10 | 2.     Plaintiff Direct Route and Defendant OnOffline are competitors in the field of providing

11 | mailing services to bulk email customers. These services are primarily used to send unsolicited

12 | email, or "spam."

13 | 3.     On January 26, 2007 Defendant OnOffline entered into a licensing agreement with

14 | Plaintiff Direct Route allowing Defendant to use Plaintiff's routing software.

15 | 4.     Defendant OnOffline terminated the agreement in April 2007. OnOffline began using its

16 | own software, which it marketed to other customers under the name "Routebee."

17 | 5.     In the summer of 2007, Plaintiff's CEO, Brent Biggs, began to suspect that Direct

18 | Route's routing software was being copied after finding evidence that his source code was posted

19 | on a Russian Internet site.

20 | 6.     When Plaintiff Direct Route installed its software on Defendant OnOffline's server, it

21 | included a "backdoor node" that allowed it to access Defendant's server. Defendant was unaware

22 | this node was installed and did not authorize it.

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING  DEFENDANTS' MOTION
FOR SANCTIONS- 2

7.     In early July 2007, Biggs used the undisclosed backdoor node to break in to Defendant OnOffline's server and view files and directories associated with OnOffline's routing software. OnOffline never authorized this access.

8.     On July 12, 2007, Mr. Biggs asked OnOffline CEO Fernando Aznar to meet him at a restaurant. At the restaurant, Mr. Biggs confronted Mr. Aznar with screenshots containing software code, and accused OnOffline of stealing Direct Route's software.

9.     In addition to using the backdoor node to investigate his suspicions, Plaintiff's CEO Brent Biggs also engaged in clandestinely tape recording phone conversations with third parties to gather evidence about alleged misappropriation of Plaintiff's software code.

10.     In June 2008, Plaintiff Direct Route hired Badgley Mullins Law Group to work with its existing counsel John Ladenburg to explore the potential infringement of Direct Route's intellectual property.

11.     On December 18, 2008, Plaintiff Direct Route received U.S. Patent No. 7,467,229 ("the '229 Patent'"). The '229 Patent encompasses a networking system that includes configuration of servers to route network addresses to a router through a networking tunnel. The router is then configured to route the network address through a recipient server. One purpose of the software is to allow bulk email service providers to ensure receipt of their messages.

12.     There is not sufficient evidence to find that Plaintiff filed the application for the '229 Patent more than one year after the product was sold or offered for sale and the invention was ready for patenting.

13.     In July 2009, Plaintiff Direct Route, through its counsel, hired Dr. Daniel Grossman, a professor in the Department of Computer Science & Engineering at the University of

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING  DEFENDANTS' MOTION
FOR SANCTIONS- 3

1   Washington, to independently analyze Defendant OnOffline's source code for copyright

2   infringement and patent infringement.

3   14.     Dr. Grossman analyzed the OnOffline source code and determined that it infringed the

4   '229 Patent. He prepared a claim chart showing every element of the claimed invention is found

5   in Defendant OnOffline's code.

6   15.     In September 2009, Plaintiff sent Defendant a letter alleging willful infringement of the

7   '229 Patent, asserting it was entitled to a royalty and treble damages, plus fees and costs.

8   16.     Plaintiff also sent threatening letters to Defendant's customers, causing Defendant's

9   revenues to drop sharply.

10  17.     Plaintiff has engaged in a pattern of sending strongly worded demand letters to its former

11  customers, as well as to their customers. These letters demanded quick settlements and

12  threatened litigation if the recipients continue to use competitors' software.

13  18.     Plaintiff filed the present suit against Defendants OnOffline and Fernando Aznar in

14  October 2009, alleging patent infringement, breach of contract, violation of Washington's

15  Uniform Trade Secret Act, conversion, and unjust enrichment.

16  19.     Shortly after Plaintiff Direct Route filed suit, Defendant OnOffline sought ex parte

17  review of the '229 Patent.

18  20.     The Court stayed the litigation pending reexamination. OnOffline's first ex parte request

19  for reexamination was initially denied, but that decision was reversed and the proceeding was

20  ultimately merged with the inter partes reexamination.

21  21.     On October 25, 2011, the U.S. Patent and Trademark Office determined that each of the

22  eight claims under the '229 Patent was rejected on multiple bases. Direct Route did not appeal,

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING  DEFENDANTS' MOTION
FOR SANCTIONS- 4

1   and the '229 Patent has been cancelled. This Court then dismissed Plaintiff's patent claim, and

2   declined to exercise jurisdiction over the remaining state law claims.

3                              **Conclusions of Law**

4          A.  Legal Standard

5          Title 35 U.S.C. § 285 provides that the Court "in exceptional cases may award reasonable

6   attorney fees to the prevailing party." 35 U.S.C. § 285. Here, the parties agree that Defendants

7   qualify as the prevailing party for the purpose of this motion. (Dkt. No. 84 at 7.) The

8   determination of whether a case is exceptional under § 285 is a two-step process. Wedgetail, Ltd.

9   v. Huddleston Deluxe, Inc., 576 F.3d 1302, 1304 (Fed. Cir. 2009). First the district court must

10  establish by clear and convincing evidence that the case is exceptional. Cambridge Prods., Ltd. v.

11  Penn Nutrients, Inc., 962 F.2d 1048, 1050 (Fed. Cir. 1992). Then, the court must exercise

12  discretion in determining whether an award of fees is appropriate in the circumstances. Cybor

13  Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1460 (Fed. Cir. 1998).

14         The Federal Circuit has explained that a case is "exceptional" "when there has been some

15  material inappropriate conduct related to the matter in litigation, such as willful infringement,

16  fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or

17  unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." Brooks

18  Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). Because the

19  right to bring and defend litigation implicates crucial First Amendment rights, the Federal Circuit

20  has held that "absent misconduct during patent prosecution or litigation, sanctions may be

21  imposed against a plaintiff only if both (1) the litigation is brought in subjective bad faith, and

22  (2) the litigation is objectively baseless." iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed.

23  Cir. 2011) (citations omitted).

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING  DEFENDANTS' MOTION
FOR SANCTIONS- 5

1          B.  Subjective Bad Faith

2          Defendants present evidence that Plaintiff has engaged in unscrupulous business

3    practices, but they do not meet their burden of showing by clear and convincing evidence that the

4    present litigation was brought in subjective bad faith. See iLOR, 631 F.3d at 1377. A claim is

5    brought in subjective bad faith if the objective unreasonableness of the claim was either known

6    or so obvious that it should have been known by the patentee. Highmark, Inc. v. Allcare Health

7    Mgmt. Sys., 687 F.3d 1300, 1313 (Fed. Cir. 2012) (citations omitted). To show that litigation

8    was brought in subjective bad faith, a party must do more than show "a patentee's bad-faith

9    business conduct toward an accused infringer prior to litigation." Forest Labs. v. Abbott Labs.,

10   339 F.3d 1324, 1329 (Fed. Cir. 2003). The Federal Circuit explains that subjective bad faith

11   litigation requires showing "vexatious, unjustified, or frivolous litigation." Id. at 1330.

12         First, Defendants fail to show that Plaintiff knew it was in violation of the PTO's one-

13   year on-sale bar when it filed suit.[1] Defendants allege Plaintiff violated the provision barring

14   issuance of a patent if the application is filed more than one year after the product was sold or

15   offered for sale and the invention is ready for patenting. (Dkt. No. 98 at 2); 35 U.S.C. § 102(b).

16   Defendants also allege that Plaintiff's principal, Brent Biggs, "knew that the pre-critical-date use

17   of and offers to sell the 'Direct Route' technology were material to the patentability of the '229

18   Patent, and knowingly acted to avoid disclosure of such information to the PTO." (Id.)

19   Defendants conclude, therefore, that "[i]n light of Direct Route's knowledge of its invalidating

20   activities, the only explanation is that Direct Route sued OnOffline on the '229 Patent in bad

21   _____

22   [1] Defendants explicitly stated in their motion for sanctions that they do not allege misconduct during patent
     prosecution or litigation. (Dkt. No. 53 at 8.) The Court accepted this representation and limited the scope of the
     evidentiary hearing accordingly. (Dkt. No. 62.) During the evidentiary hearing, Defendants' counsel explained that
23   evidence relating to Plaintiff's alleged violation of the one-year on-sale bar was meant to demonstrate that the
     litigation was brought in subjective bad faith and that it was objectively baseless, not as evidence of misconduct
24   before the PTO.

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING  DEFENDANTS' MOTION
FOR SANCTIONS- 6

1   faith." (Dkt. No. 93 at 5.) This allegation does not constitute clear and convincing evidence. <u>See</u>

2   <u>Cambridge Prods.</u>, 962 F.2d at 1050. Even if Plaintiff did violate the one-year on-sale bar,

3   Defendant fails to point to any evidence that Plaintiff was aware it was in violation of the bar.

4   (Dkt. No. 98 at 2.) All Defendants show is that Plaintiff's counsel knew that a one-year bar

5   existed in patent law, not that Plaintiff was in violation. (<u>Id.</u>) Without more, this does not show

6   bad faith.

7          Next, the fact that Plaintiff broke into OnOffline's server and stole its source code does

8   not show that the present litigation was brought in subjective bad faith. Defendants allege that

9   this break-in was "a desperate attempt to thwart OnOffline's development efforts." (Dkt. No. 53

10  at 2.) Defendants do not allege that Plaintiff orchestrated the break-in to lay the groundwork for a

11  baseless suit. (<u>Id.</u>) In fact, Plaintiff's behavior, while despicable and possibly in violation of the

12  Computer Fraud and Abuse Act, 18 U.S.C. § 1030, is consistent with that of a company that

13  sincerely believes its intellectual property is being infringed. <u>See</u> <u>Brooks</u>, 393 F.3d at 1384

14  ("enforcement of patent rights that are reasonably believed to be infringed does not entail special

15  penalty when the patentee is unsuccessful").

16         Plaintiff's efforts to extract a settlement from Defendants also do not show that the

17  present suit was brought in subjective bad faith. In his declaration supporting the present motion,

18  OnOffline CEO Aznar states that, immediately before filing the complaint in this case, Direct

19  Route served a demand letter encouraging settlement. (Dkt. No. 55 at 1.) On the date the case

20  was filed, Direct Route again emailed OnOffline's counsel and suggested the parties engage in

21  settlement discussions. (Dkt. No. 54 at 1-2.) Defendants also charge that Plaintiff made extreme

22  settlement demands, and has also engaged in similar strong-arm behavior against other

23  defendants and third parties. (Dkt. No. 53 at 2-3.) But Plaintiff's conduct in other suits does not

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING  DEFENDANTS' MOTION
FOR SANCTIONS- 7

1   prove that it brought the present litigation in bad faith. See Brooks, 393 F.3d at 1384 (conduct

2   with respect to other competitors does not support district court's conclusion that plaintiff acted

3   in bad faith in asserting its patent). More importantly, each of these demands is consistent with

4   that of a company that reasonably believes its patent is being infringed. See id. (the fact that

5   plaintiff has sued others and is unwilling to grant a license is not indicative of bad faith). Plaintiff

6   may have been rude and overly aggressive, but this does not prove bad faith.

7        Finally, evidence that Plaintiff conducted a reasonable pre-filing investigation weighs

8   against finding that the present suit was brought in subjective bad faith. Plaintiff asserts that it

9   engaged counsel in June 2008 to explore potential infringement, and also hired Dr. Daniel

10  Grossman, a professor in the Department of Computer Science & Engineering at the University

11  of Washington, to independently analyze Defendant's source code for potential patent

12  infringement. (Dkt No. 84 at 4.) Although Defendants allege that "Direct Route's own

13  employees knew, before the suit was filed, that the invention at issue was based on standard

14  network architecture," Defendants do not prove that this is true. (Dkt. No. 98 at 5.) In the

15  absence of persuasive evidence that Plaintiff's pre-filing investigation was inadequate,

16  Defendants do not show by clear and convincing evidence that Plaintiffs filed this suit in

17  subjective bad faith.

18        C.  Objectively Baseless Litigation

19        Defendants also fail to show by clear and convincing evidence that the present litigation

20  is objectively baseless. See iLOR, 631 F.3d at 1377. "To be objectively baseless, the

21  infringement allegations must be such that no reasonable litigant could reasonably expect success

22  on the merits." Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254, 1260

23  (Fed. Cir. 2008) (citations omitted). Where the infringer prevails in the underlying action, factors

24  relevant to the inquiry of objective baselessness include the closeness of the question, prefiling

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING  DEFENDANTS' MOTION
FOR SANCTIONS- 8

1  investigation, discussions with the defendant, and litigation behavior. <u>Serio-US Indus., Inc. v.</u>

2  <u>Plastic Recovery Techs. Corp.</u>, 459 F.3d 1311, 1322 (Fed. Cir. 2006). Importantly, the

3  requirement that the litigation be objectively baseless "does not depend on the state of mind of

4  the [party] at the time the action was commenced, but rather requires an objective assessment of

5  the merits." <u>Brooks</u>, 393 F.3d at 1382.

6          The strongest evidence that this litigation may have been objectively baseless comes from

7  the PTO's sweeping rejection of all claims under the '229 Patent on multiple, independent

8  grounds. (Dkt. No. 93 at 7.) Explaining the PTO action, Defendants assert that, "at the time

9  Direct Route filed the '229 Patent application, and indeed long before, a person of skill in the art

10 would have been well aware of routing technology and methods, including the method claimed

11 under the '229 Patent, to encapsulate, route, and tunnel IP addresses across multiple VLANs

12 (virtual local area networks)." (<u>Id.</u> at 9.) Defendants argue the claims under the '229 Patent were

13 based on open source code, simply automated a known manual process, and were a response to a

14 design need or market pressure. (<u>Id.</u>)

15         However, Plaintiff presents evidence that it could reasonably have been unaware of the

16 LARTC reference, which the PTO used to invalidate the '229 Patent. (Dkt. No. 84 at 8.) Plaintiff

17 explains, "Prior to the issuance of the '229 Patent, Direct Route's patent attorney and the PTO

18 Examiner collectively performed three prior art searches, none of which uncovered the LARTC

19 reference." (<u>Id.</u>) Plaintiff's expert, Dr. Grossman, also stated that he was not familiar with the

20 prior art, calling it "obscure," and saying he "was impressed with whoever found it." (<u>Id.</u>) The

21 evidence and argument of the parties do not provide a clear answer as to whether Plaintiff's suit

22 was objectively baseless. The burden of proof is therefore determinative. See <u>Q-Pharma, Inc. v.</u>

23 <u>Andrew Jergens Co.</u>, 360 F.3d 1295, 1303 (Fed. Cir. 2004). In a request for attorney's fees under

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING  DEFENDANTS' MOTION
FOR SANCTIONS- 9

1 § 285, "the underlying improper conduct and the characterization of the case as exceptional must

2 be established by clear and convincing evidence." Brooks, 393 F.3d at 1382. Defendants fail to

3 establish by clear and convincing evidence that the present litigation was objectively baseless. Id.

4 **Conclusion**

5      While the Court cannot condone Plaintiff's behavior, and a ruling in Plaintiff's favor

6 should not be viewed as approval of Plaintiff's conduct, the standard to be applied in this matter

7 is stringent. Defendants have failed to show by clear and convincing evidence that the present

8 litigation was brought in subjective bad faith and was objectively baseless. Therefore, this case is

9 not exceptional under § 285. The Court DENIES Defendants' motion for sanctions.

10      The clerk is ordered to provide copies of this order to all counsel.

11      Dated this 10th day of January, 2013.

12

13

14                            Marsha J. Pechman

15                            United States District Judge

16

17

18

19

20

21

22

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING DEFENDANTS' MOTION
FOR SANCTIONS- 10